ARCHER & GREINER
A Professional Corporation
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033-0968
(856) 795-2121
Attorneys for Plaintiff GlobalGeeks, Inc.

By:  Kerri E. Chewning, Esquire
     Benjamin J. Eichel, Esquire*
     *plenary admission pending*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLOBALGEEKS, INC.,<br><br>          Plaintiff,<br><br>vs.<br><br>SZN, LLC,<br><br>          Defendant. | Civil Action No.<br><br>Electronically Filed |

## COMPLAINT

Plaintiff GlobalGeeks, Inc. (hereinafter "GlobalGeeks") by way of Complaint against Defendant, SZN, LLC. ("SZN") alleges as follows:

### NATURE OF THE ACTION

1. GlobalGeeks engaged in three separate transactions with Defendant, SZN relating to the purchase of protective masks during the COVID-19 epidemic in the United States.

2. The first transaction, Shipment No. 1, was completed without any issue or dispute.

3. Two of those transactions, however, resulting in Shipment No. 2 and Shipment No. 3, became problematic when SZN delivered, or arranged for the delivery, of counterfeit personal protective equipment that were improperly labeled and represented to be KN95 protective masks.

4. Shipment No. 2 consisted of 290,000 masks at the price of $4.00 per mask. Those 290,000 masks purported to be KN95 masks but they were in fact counterfeit and improperly marked with KN95 labels.

5. Before it learned that the masks in Shipment No. 2 were counterfeit, GlobalGeeks began negotiations for a third shipment of masks with SZN. Shipment No. 3 was supposed to consist of 750,000 KN95 masks.

6. On May 4, 2020, and May 5, 2020, SZN delivered 476,000 masks from Shipment No. 3 to GlobalGeeks despite the fact that GlobalGeeks and SZN never agreed on a price for the masks in Shipment No. 3. The masks in Shipment No. 3 were also counterfeit and improperly labeled as KN95 masks.

7. Shipment No. 3 resulted in a non-party, U.S. Asia Global, Inc. ("USAG"), filing a five count Verified Complaint for Emergency Injunctive Relief and Damages and an Order to Show Cause against GlobalGeeks, seeking, among other things, the return of 476,000 masks.[1]

8. SZN does not dispute that the masks are in fact counterfeit.

9. When GlobalGeeks revoked acceptance of the counterfeit masks and demanded a refund, SZN agreed a refund was due, but informed GlobalGeeks that it was unable to pay because of liquidity issues and that all of SZN's funds were invested in Shipment No. 3.

---

[1] USAG and GlobalGeeks have settled their disputes relating to Shipment No. 3. See U.S. Asia Global, Inc. v. Global Geeks, Inc., Civ. No. 1:20-cv-05783 (RMB).

10. Through this Complaint, GlobalGeeks is seeking damages relating to Shipments No. 2 and No. 3 in connection with SZN's delivery of counterfeit N95 masks to GlobalGeeks and resulting litigation with USAG.

## PARTIES

11. Plaintiff, GlobalGeeks, Inc. is a New Jersey corporation with its principal place of business located at 1256 North Church Road, Suite 4, Moorestown, New Jersey 08057, that purchases, refurbishes, and distributes consumer electronics within a large international network of buyers and suppliers.

12. Defendant SZN, LLC is a New York limited liability company with a registered address of 4114 12th Ave., Brooklyn, New York, 11219.  Upon information and belief, SZN is a citizen of the State of New York.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity between GlobalGeeks and SZN and the amount in controversy in this matter exceeds the sum or value of $75,000, exclusive of interest and costs.

14. The District of New Jersey is the proper venue pursuant to 28 U.S.C. § 1391 because a substantial part of the property that is the subject of this action is situated in this judicial district.

## BACKGROUND FACTS

15. On December 31, 2019, a novel coronavirus disease ("COVID-19") was first reported in Wuhan, China and over the course of several months, it spread to the United States.

16. COVID-19 is a highly contagious respiratory disease that can spread from person to person through respiratory droplets produced when an infected person sneezes or coughs.

17. The disease has now been detected in all fifty states in the United States.

18. On January 30, 2020, the International Health Regulations Emergency Committee of the World Health Organization declared the COVID-19 outbreak a "public health emergency of international concern."

19. On January 31, 2020, the United States Department of Health and Human Services Secretary declared a public health emergency for the United States.

20. On March 7, 2020, New York Governor Andrew Cuomo declared a disaster emergency in the State of New York.

21. Two days later, on March 9, 2020, New Jersey Governor Phil Murphy declared that a public health emergency and state of emergency existed in the State of New Jersey.

22. On March 11, 2020, the World Health Organization classified COVID-19 as a pandemic.

23. Between March and April 2020, Governor Cuomo and Governor Murphy both issued stay at home and/or shelter-in-place orders.

24. Upon information and belief, between March and April of 2020, the number of confirmed cases of COVID-19 in both New Jersey and New York exceeded 100,000.

25. During this time, hospitals and medical providers in New York and New Jersey became overwhelmed and experienced shortages of personal protective equipment ("PPE") such as masks, gloves, and gowns.

26. As a result, Governor Cuomo called on businesses to help address the need for PPE by, among other things, importing, selling, or producing approved COVID-19 medical equipment and supplies.

27. GlobalGeeks responded by working to distribute PPE as part of the supply chain.

## SHIPMENT NO. 2.

28. Upon information and belief, SZN identified an opportunity to purchase and import masks and other PPE into the United States in early April 2020.

29. In April 2020, GlobalGeeks began working with SZN and made purchases of PPE from SZN so that GlobalGeeks could sell that PPE to its customers, including government agencies like New York City.

30. On April 19, 2020, GlobalGeeks issued a purchase order from SZN for 290,000 KN95 masks for a price of $4.00 per masks, totaling $1,160,000, with delivery set for GlobalGeeks' principal place of business in Moorestown.

31. A KN95 mask is a respirator manufactured in China and is considered similar to the United States manufactured N95 mask.

32. N95 and KN95 masks filter out 95% of very small test particles in the air.

33. During the course of negotiating and coordinating this shipment, GlobalGeeks only interacted with SZN.

34. SZN did not inform GlobalGeeks that it was acting as a broker for another seller.

35. On April 20, 2020, GlobalGeeks paid for this shipment by wiring $575,000 to SZN and $585,000 to Golding, Inc. pursuant to SZN's instructions.

36. GlobalGeeks received this shipment of masks on April 20, 2020.

37. GlobalGeeks' warehouse employees inspected the delivery and confirmed that the shipment contained boxes labeled as KN95 masks and counted them.

38. On April 27, 2020, GlobalGeeks sent samples of the masks contained in this shipment to its intended customer, New York City.

39. On May 1, 2020, New York City informed GlobalGeeks that it rejected the provided samples because the masks did not have the necessary markings to verify authenticity.

40. GlobalGeeks further inspected the masks and confirmed these masks are not medical grade KN95 masks, but instead are surgical masks being passed off and improperly labeled as KN95 masks.

41. In contrast to N95 or KN95 masks, surgical masks provide much less protection for the wearer and only filter larger droplets.

42. GlobalGeeks was able to confirm that the delivered masks are not KN95 masks based on the following facts: (1) the masks have three layers whereas the more protective KN95 or N95 masks contain five or more layers, (2) the masks are worn using ear loops, and (3) the manufacturer of the masks is not on the list of approved KN95 Chinese manufacturers approved for import by the Center for Disease Control and Prevention.

43. On the same day that GlobalGeeks realized that these masks were not in fact legitimate KN95 masks, it notified SZN that the masks were counterfeit and demanded that SZN retrieve the counterfeit masks and refund GlobalGeeks the purchase price.

## **SHIPMENT NO. 3**

44. During late April, before GlobalGeeks learned that the masks in Shipment No. 2 were counterfeit, GlobalGeeks and SZN discussed another order for 750,000 masks at the price of $3.00 per masks, but the parties never reached an agreement on price.

45. GlobalGeeks' CEO, Ahmad Loul, discussed the price of this purchase order with SZN employees in April 23 and April 29 WhatsApp messages.

46. Through those messages, Ahmad Loul made clear to SZN that there was no confirmed deal on the price of the masks prior to delivery.

47. Nevertheless, on May 4 and May 5, 2020, SZN delivered 476,000 of the 750,000 to GlobalGeeks' warehouse.

48. SZN then demanded payment at the originally discussed, but never agreed upon price of $3.00 per mask.

### EVENTS TRANSPIRING FOLLOWING DELIVERY OF SHIPMENT NO. 3

49. During a May 5, 2020 meeting, SZN admitted it owed GlobalGeeks a refund for Shipment No. 2

50. SZN further admitted at that meeting that it sold non-conforming goods to GlobalGeeks.

51. SZN also admitted that GlobalGeeks properly revoked its acceptance of the counterfeit KN95 masks in Shipment No. 2.

52. Despite the fact that SZN has admitted that the masks in Shipment No. 2 are counterfeits, SZN has refused to issue a refund to GlobalGeeks due to claimed liquidity problems.

53. Specifically, SZN told GlobalGeeks that it could not issue a refund for Shipment No. 2, because all of its funds were invested in Shipment No. 3.

54. On May 11, 2020, GlobalGeeks emailed SZN stating it would cooperate with any and all efforts by SZN to sell Shipment No. 3 to a buyer, and it would release Shipment No. 3 back to SZN once SZN refunded GlobalGeeks for the counterfeit masks from Shipment No. 2.

55. In response, SZN did not dispute that the masks in Shipment No. 2 are in fact counterfeit or that SZN is responsible for refunding GlobalGeeks for Shipment No. 2.

56. Instead, SZN responded by stating (for the first time) that SZN did not own Shipment No. 3 and that USAG was in fact the actual owner and seller of Shipment No. 3.

57. Shipment No. 3 resulted in litigation instituted by USAG against GlobalGeeks. That action has been resolved.

## COUNT ONE
### (Breach of Contract)

58. GlobalGeeks repeats and realleges the foregoing allegations as if more fully set forth herein.

59. GlobalGeeks and SZN entered into an agreement for GlobalGeeks to purchase 290,000 KN95 masks from SZN for a purchase price of $1,160,000.

60. SZN delivered Shipment No. 2 to GlobalGeeks on April 20, 2020 and GlobalGeeks made payment for Shipment No. 2 on April 20, 2020.

61. GlobalGeeks accepted Shipment No. 2 based on SZN's assurances that the masks were, in fact, KN95 masks.

62. GlobalGeeks was unable to discover the nonconformity of the masks before acceptance of the masks in Shipment No. 2.

63. The non-conformity substantially impairs the value of the masks to GlobalGeeks.

64. On May 1, 2020, GlobalGeeks informed SZN that the masks in Shipment No. 2 were counterfeits and were not in fact KN95 masks.

65. GlobalGeeks revoked its acceptance of Shipment No. 2 and demanded that SZN refund the purchase price and collect Shipment No 2.

66. Upon inspection of Shipment No. 2, SZN agreed with GlobalGeeks' conclusion, but has refused to retrieve the masks and has refused to refund GlobalGeeks' payment.

67. SZN breached this contract by failing to perform its obligation of delivering 290,000 KN95 masks, instead delivering masks it concedes are surgical masks and are not KN95 masks.

68. As a result of SZN's failure to perform the contract, GlobalGeeks has sustained damages, in an amount no less than $1,160,000, including the cost of defending the litigation brought by USAG relating to Shipment No. 3.

## COUNT TWO
### (Breach of the Duty of Good Faith and Fair Dealing)

69. GlobalGeeks repeats and realleges the foregoing allegations as if more fully set forth herein.

70. GlobalGeeks and SZN entered into an agreement for GlobalGeeks to purchase 290,000 KN95 masks from SZN for a purchase price of $1,160,000.

71. Every agreement under New Jersey law contains an implied covenant of good faith and fair dealing.

72. This contract, like all contracts, included the covenant of good faith and fair dealing, requiring the parties to adhere to community standards of decency fairness and reasonableness.

73. GlobalGeeks had a reasonable expectation that SZN would not attempt to violate the terms of the parties' agreement by delivering counterfeit masks.

74. GlobalGeeks had a reasonable expectation that they were dealing only with SZN and that SZN would fulfill its obligations under the parties' agreement.

75. SZN breached that covenant of good faith and fair dealing through its business dealings with GlobalGeeks.

76. SZN delivered Shipment No. 2 to GlobalGeeks on April 20, 2020 and GlobalGeeks made payment for Shipment No. 2 on April 20, 2020.

77. On May 1, 2020, GlobalGeeks informed SZN that the masks in Shipment No. 2 were counterfeits and were not in fact KN95 masks.

78. Upon inspection of Shipment No. 2, SZN agreed with GlobalGeeks' conclusion, but has refused to retrieve the masks and has refused to refund GlobalGeeks' payment.

79. During a May 5, 2020 meeting, SZN admitted it owed GlobalGeeks a refund for Shipment No. 2

80. SZN told GlobalGeeks that it could not provide a refund at that time, because all of its funds were tied up in Shipment No. 3.

81. SZN told GlobalGeeks that the parties should work together to sell Shipment No. 3 and that the funds from the sale could then be used to make GlobalGeeks whole relating to Shipment No. 2.

82. Days later, USAG brought suit against GlobalGeeks claiming damages relating to Shipment No. 3.

83. In these interactions SZN misrepresented to GlobalGeeks that it owned Shipment No. 3, which in fact was always owned by USAG.

84. SZN attempted to avoid its contractual obligations relating to Shipment No. 2 by deceiving GlobalGeeks with regards to Shipment No. 3.

85. SZN's actions were in bad faith and with malicious motive.

86. SZN's actions have caused GlobalGeeks to suffer damages in an amount no less than $1,160,000, including the cost of defending the litigation brought by USAG relating to Shipment No. 3.

### COUNT THREE
### (Quantum Meruit and/or Unjust Enrichment)

87. GlobalGeeks repeats and realleges the foregoing allegations as if more fully set forth herein.

88. SZN currently retains in its possession $1,160,000, which GlobalGeeks paid to SZN for Shipment No. 2.

89. SZN represented that the masks in Shipment No. 2 were in fact legitimate KN95 masks that could be resold by USAG as legitimate KN95 masks.

90. The masks in Shipment No. 2. are counterfeits and are not KN95 masks.

91. The masks in Shipment No. 2 are valued at far less than the $4.00 per mask price that GlobalGeeks paid to SZN.

92. GlobalGeeks paid SZN the purchase price of $1,160,000 on the good faith belief that the masks in Shipment No. 2 were what they purported to be, legitimate KN95 masks that could be sold and marketed as such.

93. To date, SZN has refused to refund GlobalGeeks' purchase price of $1,160,000.

94. Under these circumstances of having delivered counterfeit masks, it would be unjust for SZN to retain the benefit of the purchase price of $1,160,000.

95. GlobalGeeks will be substantially harmed if SZN is allowed to retain the purchase price for Shipment No 2 without compensation or refund.

## PRAYER FOR RELIEF

**WHEREFORE**, GlobalGeeks demands judgment against SZN for the following:

(a) That the contract be revoked and declared null and void by reason of the facts set forth above;

(b) That on revocation, GlobalGeeks is entitled to a refund of the purchase price paid to SZN;

(c) Consequential, incidental, and actual damages, including GobalGeeks' costs for defending the lawsuit brought by USAG relating to Shipment No.3;

    (d)    Costs, interest, and reasonable attorneys' fees; and

    (e)    Such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

    ARCHER & GREINER
    A Professional Corporation
    Attorney for GlobalGeeks, Inc.


By:   */s/ Kerri E. Chewning*
      KERRI E. CHEWNING, ESQUIRE
      BENJAMIN J. EICHEL, ESQUIRE

Dated: June 4, 2020

## **CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

I, KERRI E. CHEWNING, ESQUIRE, I hereby certify that the matter in controversy is related to another other action pending in this Court, captioned as: <u>U.S. Asia Global, Inc. v. Global Geeks, Inc.</u>, Civil No. 1:20-cv-05783(RMB).

                                           */s/ Kerri E. Chewning*
                                           KERRI E. CHEWNING, ESQUIRE

218642224v2