IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

GLOBALGEEKS, INC.

    Plaintiff/Counter-Defendant,

vs.

SZN, LLC

    Defendant/Counter-Plaintiff/
    Third-Party Plaintiff,

vs.

BARGAIN ME ONLINE, LLC,

    Third-Party Defendant.

Case No. 1:20-cv-06838 (RMB) (AMD)

---

### SZN, LLC'S VERIFIED THIRD-PARTY COMPLAINT FOR DAMAGES AGAINST BARGAIN ME ONLINE, LLC

---

**COMES NOW**, Third-Party Plaintiff, SZN, LLC ("SZN"), by and through undersigned counsel of record, pursuant to Fed. R. Civ. P. 14, and files this Third-Party Complaint for Damages as against, Third-Party Defendant, Bargain Me Online, LLC ("Bargain Me").

Now, for causes of action, SZN would state unto the Court that SZN denies all liability to GlobalGeeks, Inc. ("Global"), as alleged in the leading Complaint in this cause, (D.E. 1) and that SZN would incorporate herein the facts stated in its Verified Counter-Claim filed against GlobalGeeks, Inc.; however, SZN would further state that Bargain Me is liable to SZN for any and all liability that might ever be assessed against SZN resulting from any causes of action as alleged in Global's Complaint, and in support of same, SZN would state unto the Court as follows:

1

## PARTIES

1. Third-Party Plaintiff, SZN, LLC, is a limited liability company formed under the laws of the State of New York and with a principal place of business located at 4114 12th Avenue, Brooklyn, New York 11219.

2. Third-Party Defendant, Bargain Me Online, LLC is a limited liability company organized under the laws of the State of New York, with a principal place of business located at 1802 Avenue O, Brooklyn, New York 11230. Bargain Me Online, LLC may be served via its registered agent for service of process, Yaakov Ashlem, located at 1802 Avenue O, Brooklyn, New York 11230, or wherever he may be found.

## JURISDICTION AND VENUE

3. This Court has both general and specific jurisdiction over the parties, and subject matter jurisdiction exists as the original action is brought pursuant to 28 U.S.C. §§ 1332 and 1367 and this Court has ancillary jurisdiction over the third party claims brought pursuant to Fed. R. Civ. P. 14(a).

4. Venue is also proper on the same basis.

## BACKGROUND

5. The first reported case of COVID-19 in the United States occurred in or about February 2020, with the first COVID-19 related death occurring on February 29, 2020.

6. The number of cases of COVID-19 began to grow exponentially in the Atlantic Northeast, particularly in the States of New York and New Jersey.

7. Governor Andrew Cuomo of New York declared a state of emergency on March 7, 2020.

8. In late March, both the States of New York and New Jersey issued stay-at-home and/or shelter-in-place orders.

9. Governor Murphy issued New Jersey's stay-at-home and/or shelter-in-place order on or about March 21, 2020, and Governor Cuomo issued New York's the day before.

10. With the growing health crisis, including the increasing numbers of COVID-19 related infections and deaths, the need for Personal Protective Equipment ("PPE"), including face masks, gloves, face shields, and gowns, soared.

11. As the result of the enormous demand, supplies of PPE dropped to nearly zero in the New York and New Jersey area.

12. Individuals and companies recognized a potential business opportunity to acquire PPE, including masks, for sale in the New York and New Jersey marketplace.

13. SZN is a middleman for these transactions.

14. SZN receives Purchase Orders from prospective buyers and finds suppliers/importers who can supply the necessary quantity of goods and negotiates the procurement for the prospective buyers of the requested product.

15. For its services, SZN receives a commission out of the purchase price paid by the prospective buyer.

16. SZN takes payment from the buyer, forwards the portion of the payment due to the supplier and/or importer, and retains the balance as its negotiated commission from the transaction.

17. Global Geeks, Inc. ("Global") is a mobile phone and mobile phone accessory distributor organized under the laws of the State of New Jersey.

18. Global buys and sells mobile phones and mobile phone parts and offers mobile phone repair and refurbishing.

19. Global is a self-described "privately held responsible tech solutions company that specializes in consumer electronics and covers worldwide companies. We provide retailers,

wholesalers, corporations and international traders with premier mobile services that range from device distribution and refurbishing to asset recovery solutions."

20. Global purports to operate offices in New Jersey, London, and Dubai.

21. Prior to April 2020, Global had never transacted in the importation, sale, or distribution of personal protective equipment ("PPE").

22. Prior to April 2020, Global had never transacted in the importation, sale, or distribution of face masks.

23. Though not in the business of transacting in the importation, sale, and distribution of PPE or masks, Global believed that in the midst of the COVID-19 pandemic the purchase of PPE and/or masks —and subsequent sale of same to third parties— represented a viable business opportunity.

24. Despite having no experience in the importation, sale, and distribution of PPE or masks, Global engaged in this business at the height of the COVID-19 pandemic.

25. Global engaged in this business at the height of the COVID-19 pandemic to turn a profit.

26. Global contacted SZN about acquiring masks for resale to third parties.

27. Global intended to resell masks purchased through SZN to other third parties for a profit.

28. SZN acted as a middleman for these transactions.

29. For its services, SZN would receive a commission off the purchase price paid from Global.

30. Global engaged SZN in three (3) separate transactions for masks.

31. In each transaction, Global emailed to SZN a written Global Purchase Order which reflected the product Global sought to purchase, the quantity, and the price per piece.

4

32. To fill the Purchase Orders placed by Global, SZN used different importers and/or suppliers based upon availability and pricing.

33. On April 19, 2020 Global submitted a second Purchase Order to SZN for the purchase of 290,000 "KN95" masks at the price of $4.00 per mask ("Shipment No. 2").

34. KN95 is a certification of a mask's grade rather than a type of mask itself.

35. In the United States, domestic manufacturers produce N95 masks —a grade of mask— which must, *inter alia*, filter out 95% of airborne particulates.

36. Domestic masks that comply with certain standards are graded as "N95".

37. Many nations have different designations for the same or similar grades of masks as N95 masks; for instance:

    a. FFP2/FFP3 in the European Union;

    b. P95 in Mexico;

    c. P2/P3 in Australia; and

    d. DS/DL/DL3 in Japan.

38. KN95 is a Chinese designation for the same grade of mask, but for the fact that KN95 masks are typically slightly looser on the face as compared to N95 masks.

39. KN95 masks from China are approved for use by the United States Food and Drug Administration (FDA) in place of N95 masks.

40. SZN agreed to accept Global's Purchase Order for Shipment No. 2.

41. SZN and Global agreed to the $4.00 price per mask for Shipment No. 2.

42. The masks needed to fill the Purchase Order for Shipment No. 2 were procured from Bargain Me.

43. SZN has no affiliation with Bargain Me.

44. Bargain Me represented to SZN that it could supply the requisite number of KN95 masks to fill Global's order.

45. Bargain Me represented and warranted to SZN that the 290,000 masks were authentic and genuine KN95 masks.

46. Bargain Me provided SZN with an FDA certificate that represented that the KN95 masks were genuine, authentic, and conforming.

47. Upon information and belief, the masks supplied by Bargain Me had "KN95" imprinted on each mask.

48. Upon information and belief, the packaging for the masks supplied by Bargain Me were labeled as "KN95 Protective Masks".

49. SZN relied on Bargain Me's assurance in consummating the sale of Shipment No. 2 with Global.

50. SZN did not inspect or take custody of Shipment No. 2 prior to Global taking possession of same.

51. The masks provided by Bargain Me in fact conformed with Global's Purchase Order for Shipment No. 2.

52. The transaction between SZN and Bargain me relating to the 290,000 masks was an arm's length transaction.

53. There were no issues with Shipment No. 2.

54. Global picked up and took possession of Shipment No. 2 directly from the supplier in the State of New York on April 20, 2020.

55. SZN had no role in the pickup.

56. Global had the opportunity to inspect the masks prior to taking possession of them from Bargain Me.

6

57. Global did not inspect the masks received from Bargain Me at the time Global took possession.

58. On April 20, 2020, after picking up the 290,000 masks from Bargain Me, Global paid $1,160,000.00 for Shipment No. 2.

59. SZN paid Bargain Me its money from Global's payment for Shipment No. 2.

60. SZN took its negotiated commission from Global's payment for Shipment No. 2.

61. Global sold the masks from Shipment No. 2 to a third-party user at a profit above the Purchase Order price.

62. Upon information and belief, Global's third-party end user refused to pay for the masks.

63. On or about May 1, 2020 - nearly two (2) weeks after Global took possession of the masks and paid SZN for Shipment No. 2 - Global contacted SZN and claimed the masks comprising Shipment No. 2 did not conform with the Shipment No. 2 Purchase Order.

64. Based upon the information it has reviewed, SZN rejects Global's claim of nonconformance.

65. However, should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, Bargain Me would be the source of this nonconformance.

66. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, Bargain Me would have breached its contractual obligations with SZN.

67. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, Bargain Me would have misrepresented material facts to SZN in an effort to induce SZN into entering into a contract.

68. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, Bargain Me would have breached its equitable obligations to SZN.

69. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, Bargain Me would be the responsible party owing repayment to Global and SZN.

70. SZN has asked Bargain Me to refund the $1,160,000.00 it was paid for Shipment No. 2.

71. Bargain Me has refused to refund any portion of the $1,160,000.00 it was paid for Shipment No. 2.

## COUNT I:
## BREACH OF CONTRACT

72. SZN repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Third-Party Complaint.

73. SZN entered into a valid and binding contract with Bargain Me for Bargain Me to provide 290,000 conforming masks.

74. Bargain Me provided 290,000 masks in exchange for $1,160,000.00, less SZN's commission.

75. The 290,000 masks being genuine and conforming masks was the basic material term of the contract between SZN and Bargain Me.

76. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, Bargain Me will have breached the contract with SZN by failing to deliver genuine and conforming masks.

77. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, Bargain Me's breach was reckless and/or willful and intentional in that it knew or should have known that the masks were not conforming.

78. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, SZN will have been damaged by Bargain Me's breach and will have been subjected to suit by Global relating to the non-conformity of the 290,000 masks.

79. SZN has suffered reputational harm and the loss of revenues and profits from other sales as the result of Global's claim and Bargain Me's conduct.

80. As a direct and proximate result of Global's breach, SZN has been damaged.

## COUNT II:
## FRAUDULENT INDUCMENT AND/OR MISREPRESENTATION

81. SZN repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Third-Party Complaint.

82. Bargain Me represented to SZN that it could provide 290,000 masks which conformed to those ordered by Global under the Purchase Order for Shipment No. 2.

83. Bargain Me knew that promising it could deliver the conforming masks would induce SZN to consummate a deal with Bargain Me.

84. Bargain Me knew that the 290,000 masks being genuine and conforming was a material term of the agreement between SZN and Bargain Me.

85. Bargain Me repeatedly assured SZN that the 290,000 masks were genuine and conforming.

86. Bargain Me repeatedly assured SZN that the 290,000 masks were genuine and conforming, even after Global alleged that the masks were non-conforming.

87. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, Bargain Me would have known that it was not providing conforming masks to SZN and Global.

88. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, Bargain Me would have known at the time the claim of nonconformance was raised that it did not provide conforming masks under Shipment No. 2.

89. If SZN had known that Bargain Me could not provide 290,000 conforming masks, SZN would never have entered into an agreement with Bargain Me.

90. If SZN had known that Bargain Me did not intend to provide 290,000 conforming masks, SZN would never have entered into an agreement with Bargain Me.

91. SZN relied, to its detriment, on Bargain Me's statements.

92. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, SZN will have relied, to its detriment, on Bargain Me's false statements.

93. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, SZN will have been damaged by Bargain Me's negligent and/or fraudulent misrepresentations and will have been subjected to suit by Global relating to the authenticity and/or non-conformity of the 290,000 masks.

94. SZN has suffered reputational harm and the loss of revenues and profits from other sales as a result of Global's claim and Bargain Me's conduct.

95. As a direct and proximate result of Bargain Me's fraudulent misrepresentations and inducements SZN has been damaged.

## COUNT III:
## BREACH OF WARRANTY OF MERCHANTIBILITY AND WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

96. SZN repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Third-Party Complaint.

97. Bargain Me is a merchant.

98. Bargain Me represented that it had knowledge of KN95 masks.

99. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, then the 290,000 masks provided by Bargain Me were falsely labeled and passed off by Bargain Me as genuine KN95 masks and were not the type of goods for which SZN contracted.

100. Bargain Me knew that SZN required 290,000 genuine and conforming masks.

101. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, then the 290,000 masks provided by Bargain Me were nonconforming goods.

102. Bargain Me knew that SZN was relying on its skill and judgment to select and/or furnish suitable conforming masks.

103. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, Bargain Me knew that the 290,000 masks it provided were not fit for the purpose for which SZN ordered them from Bargain Me.

104. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, Bargain Me knew that the 290,000 masks it provided were not fit for the purpose for which Global ultimately ordered them.

105. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, Bargain Me knew that the 290,000 masks it provided were not fit for use as intended.

106. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, the 290,000 masks provided by Bargain Me were not of the same grade or quality as other genuine KN95 masks.

107. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, the 290,000 masks provided by Bargain Me were below commercial standards.

108. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, the 290,000 masks provided by Bargain Me were not merchantable as such term is defined by the Uniform Commercial Code.

11

109. Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, SZN has been damaged by Bargain Me's conduct and has been subjected to suit by Global relating to the authenticity and/or non-conformity of the 290,000 masks.

110. SZN has suffered reputational harm and the loss of revenues and profits from other sales as the result of Bargain Me's conduct.

111. Should SZN suffer injuries and damages, past, present, or future as a result of a determination that Shipment No. 2 was, in fact, non-conforming, the damages are actually and proximately related to Bargain Me's breaches of warranty, tortious conduct, and/or conduct in breach of contract.

112. SZN notified Bargain Me of Global's allegations regarding the 290,000 masks, and the attendant lawsuit, and SZN's damages; however, Bargain Me continues to assert the masks are authentic and conforming and that it is not liable for anything.

113. Neither the warranty of merchantability or fitness for a particular purpose were waived, modified, or otherwise disclaimed by Bargain Me.

## COUNT IV:
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

114. SZN repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Third-Party Complaint.

115. Bargain Me represented to SZN that it could provide 290,000 conforming masks.

116. Bargain Me knew that promising it could deliver the conforming masks to Global would induce SZN to consummate a deal with Bargain Me and make payment to Bargain Me.

117. Bargain Me knew that the 290,000 masks being genuine and conforming was a material term of the agreement between SZN and Bargain Me.

118.   Bargain Me repeatedly assured SZN that the 290,000 masks were genuine and conforming.

119.   Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, Bargain Me knew, at the time it represented to SZN that it could provide genuine and conforming masks, that Bargain Me could not supply 290,000 conforming masks.

120.   Bargain Me repeatedly assured SZN that the 290,000 masks were genuine and conforming even after Global alleged that the masks were non-conforming.

121.   Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, Bargain Me will have acted in bad faith.

122.   Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, SZN will have been damaged by Bargain Me's bad faith and unfair dealing and SZN will have been subjected to suit by Global relating to the authenticity and/or non-conformity of the 290,000 masks.

123.   SZN has suffered reputational harm and the loss of revenues and profits from other sales as the result of Bargain Me's conduct.

124.   As a direct and proximate result of Bargain Me's bad faith and unfair practices SZN has been damaged.

## COUNT V:
## EQUITABLE CONTRIBUTION AND/OR INDEMNIFICATION

125.   SZN repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Third-Party Complaint.

126.   Should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, Bargain Me's conduct in delivering nonconforming goods and failing to cure

constitutes, *inter alia*, a breach of contract, breach of the warranty of fitness for a particular purpose, and warranty of merchantability.

127.    SZN denied any liability to Global arising from the claims set forth in the leading Complaint in this matter; however, should it ultimately be determined that Shipment No. 2 was, in fact, non-conforming, and in the event SZN is found liable to Global on any or all claims in Global's Complaint, the liability would be based and predicated, not on any active wrongdoing on the part of SZN, but solely upon the acts and omissions of Bargain Me.

128.    If Global has sustained any damages, then said damages and losses, if any, were sustained as a direct and proximate result of the acts and/or omissions of Bargain Me in the sourcing, recommendation, and provision of nonconforming goods, including the masks, received by Global.

129.    In the event Global prevails on any of its claims against SZN set forth in the original leading Complaint, SZN will be damaged as a direct and proximate cause of Bargain Me's acts and/or omissions as alleged herein.  As such, Bargain Me should be liable to SZN for equitable contribution and/or indemnification in the event SZN is found liable to Global.

130.    Accordingly, if SZN is found liable under any legal theory for any damages or injuries alleged in the original leading Complaint, Bargain Me must indemnify SZN to the extent to which Global is granted judgment against SZN, as well as all court costs and expenses, including attorneys' fees incurred, paid, or owing by SZN for this action.

131.    If SZN is found liable under any legal theory for any damages or injuries alleged in the original leading Complaint, Bargain Me must be held to equitably contribute to SZN to the extent to which Global is granted judgment against SZN in an amount equal to Bargain Me's share of fault, as well as all court costs and expenses, including attorneys' fees incurred, paid, or owing by SZN for this action.

**WHEREFORE, PREMISIES CONSIDERED**, SZN therefore prays for the following relief:

1. That process issue and Bargain Me be required to answer this Third-Party Complaint within the time prescribed by law;

2. That SZN be awarded damages as against Bargain Me for any breach of contract with SZN;

3. That SZN be awarded damages as against Bargain Me as the result of any breach of the warranty of merchantability and the warranty of fitness for a particular purpose;

4. That SZN be awarded damages as against Bargain Me for its bad faith and unfair dealing.

5. That upon conclusion of this action, SZN be awarded compensatory damages as against Bargain Me for all costs to defend the claims of Global arising from the original leading Complaint;

6. That upon conclusion of this action, SZN be awarded damages in any amount awarded in favor of Global as against SZN over and against Bargain Me for indemnification and/or equitable contribution as the proof shows;

7. That the costs of this action be assessed, in whole or in part, as against Bargain Me;

8. That the Court award SZN its reasonable attorney fees and costs, to the extent permitted by relevant law, associated with bringing the instant action;

9. That the Court award SZN pre and/or post-judgment interest at the maximum rate allowable by law; and

10. For such other and further relief to which SZN may be entitled, whether under contract, principles of equity, or at law.

Respectfully Submitted:

GLANKLER BROWN, PLLC

By: _____
S. Joshua Kahane (*Admitted Pro Hac Vice*)
Aubrey B. Greer (*Admitted Pro Hac Vice*)
6000 Poplar Ave., Suite 400
Memphis, Tennessee 38119
Telephone: (901) 576-1715
Facsimile: (901) 525-2389
jkahane@glankler.com
agreer@glankler.com


**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

By: /s/ Neil Grossman
Neil Grossman (NJ # 013641995)
144 N. Beverwyck Road, #187
Lake Hiawatha, New Jersey 07034
Telephone: (973) 335-6409
Facsimile: (973) 335-3717
neil@bgandg.com

*Attorneys for Defendant, SZN, LLC*

S. JOSHUA KAHANE, being duly sworn, declares under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following statements are true and correct to the best of his information and belief.

In accordance with Local Civ. R. 11.2, I hereby certify that to the best of my information and belief, the matter in controversy is not the subject of any other action pending in any court or arbitration proceeding except that it is related to the action pending in this court captioned as *U.S. Asia Global, Inc. v. Global Geeks, Inc.*, Case No. 1:20-cv-05783 (RMB) in which a Rule 41 Stipulation of Dismissal with Prejudice was entered on July 20, 2020.

I hereby certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on July 20, 2020

S. Joshua Kahane

## VERIFICATION

**STATE OF NEW YORK**
**COUNTY OF KINGS**

I, Simon Nussenceig, Managing Member for SZN, LLC makes oath that I have read the foregoing Verified Third Party Complaint and that the same is true of my own knowledge, except to matters stated to be upon information and belief, and as to those matters, I believe them to be true.

Executed this 20 day of July 2020.

_____
Simon Nussenceig

My Commission Expires: 7/20/2020

_____

JOSEPH ITZKOWITZ
Notary Public, State of New York
No. 01IT6178009
Qualified in Kings County
Commission Expires November 19, 2021

19

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2020, a copy of the foregoing was served on the parties listed below via the Court's ECF System and via e-mail and/or United States Mail, postage prepaid:

Ms. Kerri E. Chewning, Esq.
Mr. Benjamin J., Eichel, Esq.
ARCHER & GREINER, PC
One Centennial Square
33 East Euclid Avenue
Haddonfield, NJ 08033
Telephone:   (856) 795-2121
*Attorneys for Plaintiff GlobalGeeks, Inc.*

S. Joshua Kahane