[Docket Nos. 60 and 61]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

GLOBALGEEKS, INC.,

      Plaintiff/Counter-Defendant,

      v.

SZN, LLC,

      Defendant/Counter-Plaintiff/
      Third-Party Plaintiff,

      v.

BARGAIN ME ONLINE, LLC,

      Third-Party Defendant.

Civil No. 20-06838 (RMB/AMD)

**OPINION**

## APPEARANCES

Benjamin J. Eichel
Boni, Zack & Snyder LLC
15 Saint Asaphs Road
Bala Cynwyd, PA 19004

      *On behalf of Plaintiff/Counter-Defendant GlobalGeeks, Inc.*

Neil Grossman
Bronstein, Gewirtz & Grossman, Esqs.
144 North Beverwyck  Road  Lake, #187
Lake Hiawatha, NJ 07034

      *On behalf of Defendant/Counter-Plaintiff/Third-Party Plaintiff SZN, LLC*

Michael Steinmetz
Garson, Segal, Steinmetz, Fladgate LLP
164 West 25th Street, 11R
New York, NY 10001

> *On behalf of Third-Party Defendant Bargain Me Online, LLC*

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court upon Counter-Defendant GlobalGeeks, LLC's ("GlobalGeeks's") Motion to Dismiss the Amended Counterclaim [Docket No. 60], and Third-Party Defendant Bargain Me Online, LLC's ("Bargain's") Motion to Dismiss the Third-Party Complaint [Docket No. 61]. For the reasons set forth below, the motion to dismiss filed by GlobalGeeks is **GRANTED**, in part, and **DENIED**, in part, and the motion to dismiss filed by Bargain is **DENIED**.

## I.    FACTUAL BACKGROUND

The current controversy was set in motion at the onset of the COVID-19 pandemic and concerns three different shipments of "KN95" masks –a Chinese designation for personal protective equipment ("PPE") masks that must filter at least 95 percent of airborne particles. [Docket No. 14 ¶¶ 35-38.] In the United States, the comparable grade of PPE mask is known as "N95," but the Food and Drug Administration ("FDA") approved KN95 masks for emergency use early in the pandemic. [*Id.* ¶ 39.] GlobalGeeks, as the buyer of all three orders of KN95 masks at issue, placed each order with SZN, LLC ("SZN"). SZN alleges that in each instance it acted solely as a broker and generally carried out the same role:  SZN received purchase orders from GlobalGeeks for a specified number of masks at a certain price,

"found suppliers who can supply the necessary quantity" of PPE masks, collected payment from GlobalGeeks, "forwarded the portion of the payment due to the supplier and/or importer, and retained the balance as its negotiated commission from the transaction." [Docket No. 28 ¶¶ 15-28.] The details surrounding each of the three orders of KN95 masks placed by GlobalGeeks with SZN, as alleged by SZN, are summarized below.

### Shipment 1

The first order placed by GlobalGeeks was for 70,000 masks at $4.00 per masks, which SZN sourced from a New Jersey company named KoolerThings, Inc. ("Shipment 1"). [Docket No. 28 ¶¶ 35-38.] SZN alleges that it "neither inspected nor took custody of these masks at any point," and Shipment 1 was delivered directly to GlobalGeeks. [Docket No. 66, at 2; Docket No. 67, at 3.] After delivery, GlobalGeeks paid SZN "the full $280,000 purchase price for the masks," SZN withheld its commission, "and the supplier was paid for the masks." [*Id.*] There was no dispute regarding whether the masks in Shipment 1 conformed as genuine KN95 masks.

### Shipment 2

The second order for KN95 masks placed by GlobalGeeks with SZN was for 290,000 masks at the same price of $4.00 per mask, and this time, SZN sourced the masks from a different supplier, Third-Party Defendant Bargain ("Shipment 2"). [Docket No. 66, at 3; Docket No. 67, at 3.] Again, SZN alleges that it acted solely as a broker, that it did not at any point take possession over or inspect any of the masks

in Shipment 2, and that Shipment 2 was delivered directly to GlobalGeeks. [*Id.*] GlobalGeeks paid SZN $1,160,000 total for Shipment 2, SZN held back its commission, and then paid Bargain the remaining balance for supplying the masks. [*Id.*] However, two weeks after GlobalGeeks took possession of Shipment 2, GlobalGeeks contacted SZN to inform it that the masks in Shipment 2 did not conform as genuine KN95 masks. [Docket No. 14 ¶ 63.]

### Shipment 3

At the same time Shipment 2 was procured, GlobalGeeks placed a third order with SZN for an additional 750,000 masks at a lower purchase price of $3.00 per mask ("Shipment 3"). [Docket No. 66, at 3; Docket No. 67, at 4.] SZN located a third supplier to fulfill this order, U.S. Asia Global, LLC ("USAG"), and SZN alleges that GlobalGeeks expressly agreed that its commission for Shipment 3 would be 37.5 percent of the total purchase price, or $843,750.00. [*Id.*] Again, SZN contends that it acted solely as a broker, that it did not take custody of or inspect any of the masks in Shipment 3, and that partial delivery of over half of the masks in Shipment 3 (476,000 in total) were delivered directly to GlobalGeeks. [*Id.*] This time, however, GlobalGeeks refused to tender payment to SZN "as it claimed the masks of Shipment 2 were nonconforming." [Docket No. 66, at 4; Docket No. 67, at 4.]

SZN also contends that GlobalGeeks refused to return the alleged nonconforming masks in Shipment 2, and "retained possession of Shipment [3] without paying in order to create leverage through which to force SZN to refund. . . Shipment [2]." [*Id.*] USAG, the supplier of Shipment 3, initiated a separate lawsuit

4

against GlobalGeeks, and eventually USAG was awarded injunctive relief that required GlobalGeeks to return the 476,000 masks comprising the part of Shipment 3 that had been delivered back to USAG. [*Id.*]

## II.   PROCEDURAL BACKGROUND

GlobalGeeks filed the initial complaint in the underlying case against SZN on June 4, 2020, demanding a refund for the $1,160,000 payment it tendered to SZN for the nonconforming masks comprising Shipment 2. [Docket No. 1.] GlobalGeeks then filed a motion for summary judgment against SZN, seeking a refund for Shipment 2 as a matter of law. [Docket No. 57.] GlobalGeeks, SZN, and Bargain collectively retained Nelson Laboratories in Salt Lake City, Utah to serve as a neutral expert and test the filtering efficiencies of the masks comprising Shipment 2, and the results of such testing found that the filtration efficiency of a sample of the masks in Shipment 2 ranged between only 36 percent and 37.6 percent (*i.e.*, much lower than the 95 percent requirement for KN95 grade PPE masks). [Docket No. 57-4.] On October 12, 2021, this Court granted GlobalGeeks's Motion for Summary Judgment against SZN, a motion SZN did not oppose. [Docket No. 73.] Now before this Court are two pending motions to dismiss SZN's Amended Counterclaim against GlobalGeeks and SZN's Third-Party Claim against Bargain.

## III.   JURISDICTION

This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332 in that there is complete diversity between GlobalGeeks and SZN and the amount in controversy in this matter exceeds the sum or value of $75,000, exclusive

of interest and costs. This Court has ancillary jurisdiction over the third-party claims in this action between SZN and Bargain pursuant to Fed. R. Civ. P. 14(a).

## IV.   LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (first citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); then citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); and then citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual

6

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'. . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570). A district court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## V.     ANALYSIS

### A.     Bargain's Motion to Dismiss – Shipment 2

SZN's Third-Party Complaint against Bargain concerns Shipment 2. SZN alleges that Bargain, as the supplier of Shipment 2, is the party responsible for the nonconformance of the masks comprising Shipment 2, such that Bargain breached the contractual obligations it owed to SZN (Count I), fraudulently induced and/or misrepresented material facts to SZN (Count II), breached equitable obligations owed to SZN under the warranties of merchantability and fitness for a particular purpose (Count III), breached the covenant of good faith and fair dealing (Count IV), and given that SZN has already been found liable and must refund the payment it collected from GlobalGeeks for Shipment 2, SZN alleges that Bargain must now indemnify it under the legal theories of equitable contribution and/or indemnification (Count V). [Docket No. 14, at 8-14.]

In support of its motion to dismiss SZN's Third-Party Complaint, Bargain alleges an entirely different set of facts. The overarching theme in Bargain's story is that SZN has mischaracterized it as the seller/supplier of Shipment 2 in the tangled transaction that resulted in the delivery of 290,000 nonconforming KN95 masks to GlobalGeeks. [Docket No. 61, at 1-2.] According to Bargain, it too merely acted as a broker of the deal by "introduc[ing] SZN to. . . a local PPE seller called Ace" at the request of SZN. [*Id.*]

Bargain misconstrues the relevant inquiry before the Court on a motion to dismiss. It is simply insufficient for Bargain to allege a different version of the events

8

at the present juncture. SZN is correct that the Court must accept its well-pled allegations as true, and as pointed out by SZN, this Court previously explained that "[t]he purpose of a motion to dismiss is not to foreclose a plaintiff's right to relief by attacking its facts; rather, it is to test the legal sufficiency of plaintiff's allegations assuming each of those facts are true." [Docket No. 66, at 7 (citing *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 460 (D.N.J. Mar. 30, 2020)).] SZN's Third-Party Complaint, among other things, unequivocally states that Bargain acted as the seller/supplier of Shipment 2, a material fact the Court must accept as true:  "The masks needed to fill the Purchase Order for Shipment [2] were procured from [Bargain]"; "[Bargain] represented to SZN that it could supply the requisite number of KN95 masks to fill Global[Geeks]'s order"; "Bargain represented and warranted to SZN that the 290,000 masks were authentic and genuine. . .provided SZN with an FDA certificate that represented that the KN95 masks were genuine, authentic, and conforming…[and] upon information and belief, the packaging for the masks supplied by [Bargain] had 'KN95' imprinted on each mask." [Docket No. 14 ¶¶ 42, 44-47]. Thus, any argument made by Bargain in support of its present motion that depends on a finding that its role was limited to that of a broker and not as the seller/supplier of Shipment 2 must be rejected by the Court at this stage of the litigation. Discovery will tell the complete story.

### 1.    Breach of Contract (Count I)

"To state a claim for breach of contract, [a claimant] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and

(4) that the party stating the claim performed its own contractual obligations."
*Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citations omitted). Bargain
first argues that SZN has not adequately pled the existence of any contract between it
and SZN under prong one. Both parties acknowledge the only written instrument
presently before the Court evincing the parties' alleged contract is an invoice, dated
April 19, 2020, which lists Bargain's letterhead and SZN's address (as both the "bill
to" and "ship to" addresses), provides for 290,000 KN95 masks at $3.60 per mask
(totaling $1,044,000), and includes wiring instructions (for payment to Bargain's
bank account, which is redacted). [Docket No. 62-1.] Bargain also highlights, in
particular, Paragraph 73 of SZN's Third-Party Complaint where SZN expressly
alleges that it "entered into a valid and binding contract with [Bargain] for [Bargain]
to provide 290,000 conforming masks." [Docket No. 61, at 4 (citing Docket No. 14 ¶
73).] Bargain contends that this allegation must be rejected by the Court as "generic,
conclusory, and self-serving." [*Id.*] In addition, Bargain contends that any oral
contract between the parties is precluded by the statute of frauds since the alleged
sale was for a significant number of goods. [*Id.* at 5.]

Nonetheless, Bargain overlooks an important aspect of SZN's breach of
contract claim. It is well-established under the Uniform Commercial Code ("UCC"),
as codified in pertinent part by New Jersey statute, that a party cannot invoke the
statue of frauds defense with respect to an alleged contract for the sale of goods "if
that party has received and accepted payment." *First Valley Leasing, Inc. v. Goushy*,
795 F.Supp. 693, 696 (D.N.J. 1992) (citing N.J. Stat. Ann. § 12A:2-201(3)(c)). The

Court finds that SZN's Third-Party Complaint sufficiently alleges that Bargain received payment for Shipment 2:  "[o]n April 20, 2020, after picking up the 290,000 masks from [Bargain], Global[Geeks] paid $1,160,000.00 for Shipment [2]; SZN paid [Bargain] its money from Global[Geeks]'s payment for Shipment [2]; SZN took its negotiated commission. . . ." [Docket No. 14 ¶¶ 58-60]. The Court agrees that when Paragraph 73 of SZN's Third-Party Complaint is read on a standalone basis, it reads as an impermissible legal conclusion. However, considering the underlying allegations in SZN's Third-Party Complaint holistically, SZN has adequately alleged that it procured masks to GlobalGeeks that were sold/supplied by Bargain and for which Bargain received payment. Thus, Bargain's statute of frauds defense that a written contract must exist for there to be a breach does not carry the day. The Court also need not decide at this stage of the litigation whether the invoice satisfies the requirements of a legally enforceable written contract. SZN has met its burden at the pleading stage to establish that a contract existed between it and Bargain by pleading Bargain's acceptance of payment for Shipment 2 upon delivery to GlobalGeeks.

Bargain's other arguments that the Court should dismiss SZN's breach of contract claim against it concern prongs two and three of the breach of contract inquiry and fail because they are based on the notion that Bargain was a broker of the deal and not the alleged seller/supplier of Shipment 2 as pled by SZN. Bargain argues that it did not fail to perform its obligations under the alleged contract because it had no obligation to deliver conforming goods, only to procure a seller. Bargain also argues that liability for any damages flowing from the nonconforming goods in

Shipment 2 lie with the seller, which it is not, and that it, like SZN, had no duty to inspect the goods as a broker. Again, any such argument that constitutes a blanket denial of the facts pled by SZN are issues for discovery and will be resolved another day. Bargain's motion to dismiss Count I of the Third-Party Complaint is denied.

### 2.    Fraud in the Inducement (Count II)

To establish a claim for fraud in the inducement, which is Count II of SZN's Third-Party Complaint, "five elements must be shown:  (1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *Turbulent Diffusion Tech. Inc. v. Amec Foster Wheeler N. Am. Corp.*, Civ. No. 15-7105 (MLC), 2017 WL 1752951, at *5 (D.N.J. May 4, 2017) (citations omitted). Bargain admits that any alleged claims regarding the nonconforming goods "would only be material if [Bargain] was the seller," but this is precisely what the Court must assume on a motion to dismiss as it is what has been pled by SZN. [*Id.* at 9.] Bargain disputes prong two by arguing that even if it made assurances to SZN as to the quality of the masks in Shipment 2, it was only doing so based on assurances made to Bargain by the actual seller. [*Id.*] With respect to prong three, Bargain claims that it "had no intention SZN would rely upon [Bargain] as they were simply the broker in the negotiation process." [*Id.* at 10.] These arguments are likewise based on facts that have not been pled. Bargain's motion to dismiss

Count II is denied.

### 3.    The Warranties of Merchantability and Fitness (Count III)

As for the implied warranties of merchantability and fitness, Bargain admits that such warranties apply to the seller of goods, which the Court must assume it was at this juncture. [Docket No. 61, at 10-11.] Thus, Count III remains.

### 4.    The Covenant of Good Faith and Fair Dealing (Count IV)

Bargain argues that the implied duty of good faith and fair dealing are inapplicable because it had no contract with SZN, and that it did not destroy the benefit of any contract SZN did have with the actual seller of the masks in Shipment 2. Again, the Court will not permit the dominoes to fall on a motion to dismiss based on Bargain's facts that are opposite SZN's well-pled allegations.

In its reply brief, Bargain further argues that because SZN did not oppose GlobalGeeks's Motion for Summary Judgment, the Court must accept as true GlobalGeeks's statement of facts under Fed. R. Civ. P. 56.1. [Docket No. 69, at 1.] Although that is a fair point, Bargain then goes on to cherry pick one fact set forth in GlobalGeeks's Rule 56.1 Statement: "that SZN arranged for shipment of the Masks/Goods," but nonetheless argues that it "had no control of the Masks/Goods and did not know who the third-party seller was." [*Id.* at 7.] Essentially, Bargain asks the Court to read into this statement that because SZN arranged for shipment of the masks, it must have known who the seller was *and it was not Bargain*. The Court will not do so, and finds that the statement Bargain relies on, as written, does not contradict SZN's position that Bargain was the seller/supplier of Shipment 2. Count

13

IV also remains.

### 5.    Equitable Contribution/Indemnification (Count V)

Finally, Bargain argues that it cannot be found contributorily liable for any damages incurred by SZN as a result of nonconforming Shipment 2. Bargain argues that under a theory of equitable contribution, only a co-obligor can be held contributorily liable, which requires the existence of a legally enforceable contract between the parties. [Docket No. 61, at 14.] SZN refutes this argument and claims that principles of substantial justice and equity underly its claim even absent a valid contract, citing case law where courts applied the principles of equitable subrogation in the insurance context. [Docket No. 66, at 18.] What the parties' precise relationship actually was is a good question, but nonetheless, is a question that warrants additional discovery and must be resolved another day. Similarly, the Court need not decide on a motion to dismiss what legal theory, if any, may warrant liability shifting in the current controversy, which both parties admit depends, in part, on whether an enforceable contract existed between them. Thus, Count V also remains, and SZN has met its pleading burden to survive Bargain's current Rule 12(b)(6) motion.

### B.    GlobalGeeks' Motion to Dismiss – Shipment 3

SZN's Amended Counterclaim against GlobalGeeks concerns Shipment 3. Specifically, SZN alleges that GlobalGeeks held Shipment 3 hostage and refused to pay for it to leverage a refund for nonconforming Shipment 2, including that GlobalGeeks breached its contractual obligations owed to SZN regarding payment

14

for brokering Shipment 3 (Count I), tortiously interfered with SZN's prospective economic advantage (Count II), had no intention of performing under the purchase order for Shipment 3 which constitutes fraud (Count III), breached the implied covenant of good faith and fair dealing (Count IV), and that SZN is entitled to recover under legal theories of equitable estoppel/detrimental reliance (Count V). [Docket No. 28, at 11-20.] Moreover, SZN alleges that "[e]ven after Global[Geeks] claimed non-conformance of Shipment [2], Global[Geeks] never sought to cancel Shipment [3]." [Docket No. 28 ¶ 83.] According to SZN, GlobalGeeks's refusal to tender any payment for Shipment 3 after it was partially delivered "had nothing to do with Shipment [3]," but was to hold the goods hostage and "leverage its claim relating to [nonconforming] Shipment [2]." [*Id.* ¶¶ 93-95.] GlobalGeeks has moved to dismiss all five counts alleged in SZN's Amended Counterclaim against it, which the Court considers in the order briefed by the parties.

### 1. Breach of Contract (Count I) and the Covenant of Good Faith and Fair Dealing (Count IV)

In its supporting brief, GlobalGeeks argues that SZN's breach of contract claim must be dismissed because the Court cannot find that a valid contract existed between them, and if there is no underlying contract, the implied covenant of good faith and fair dealing is inapplicable. [Docket No. 60-1 at 5, 12.] GlobalGeeks provides three separate legal theories as to why the Court should find that no legally-enforceable contract ever existed between it and SZN.

First, GlobalGeeks argues that a brokerage agreement whereby the parties agreed SZN would locate a supplier of Shipment 3 in exchange for a 37.5 percent commission is void as a matter of public policy because any such arrangement constitutes illegal price gouging during a state of emergency. [Docket No. 60-1, at 5-7.] GlobalGeeks cites statutes codified in New Jersey (where GlobalGeeks is located) and New York (where SZN is located). The relevant New Jersey statute prohibits selling or offering "merchandise which is consumed or used as a direct result of an emergency" at an "excessive price," which is defined in pertinent part as follows:

> In those situations where the increase in price is attributable to additional costs imposed by the seller's supplier or additional costs of providing the good or service during the state of emergency, the price represents an increase of more than 10 percent in the amount of markup from cost, compared to the markup customarily applied by the seller in the usual course of business immediately prior to the state of emergency.

N.J. Stat. Ann. §§ 56:8-108(2), 109 (West). In New York, the analogous state statute prohibits charging prices that are "unconscionably excessive," and also states that "whether a price is unconscionably excessive is a question of law for the court." N.Y. Gen. Bus. Law § 396-r (McKinney). However, the Court is not persuaded that SZN's alleged 37.5 percent commission for brokering Shipment 3 automatically constitutes a 37.5 percent illegal price markup of PPE as alleged by GlobalGeeks. Rather, the Court agrees with SZN that whether the price of masks during the onset of the COVID-19 pandemic constituted illegal price gouging requires a more searching factual inquiry that has not yet occurred at this stage of litigation. SZN points out that such inquiry "requires additional development and discovery" to establish "the

16

baseline prices of masks prior to the COVID-19 pandemic" and "the average price per unit for a mask during various periods of the pandemic." [Docket No. 67, at 9-10.] The Court notes that it may be the case that a 37.5 percent commission was the typical fee for these kinds of brokerage services even before the pandemic, and the surge of PPE pricing that occurred may have been caused elsewhere in the supply chain for PPE that was stretched by the onslaught of a deadly pandemic. In any event, it is too early to say.

Second, GlobalGeeks argues that SZN's contract claim must fail because SZN "fails to allege that it plausibly performed the contract." [Docket 60-1, at 7.] GlobalGeeks alleges that no negotiations over SZN's commission for Shipment 3 ever took place between it and SZN, as SZN's commission was negotiated directly with USAG. [*Id.*] However, this is clearly an issue of fact that should be resolved through discovery and not by the Court on a motion to dismiss. GlobalGeeks even admits that SZN "coordinated delivery of a portion of Shipment 3 by bringing buyer (GlobalGeeks) and seller (USAG) together," but according to GlobalGeeks, SZN could not have performed under the parties' alleged contract because SZN took no part in importing the masks, never inspected them, and at all times, USAG retained legal title over the masks in Shipment 3 as established in subsequent litigation. [Docket No. 60-1, at 8-9.] However, in assessing whether SZN outright failed to perform under the alleged contract, the Court need not consider every step in the supply chain that did not involve SZN. In its most basic terms, the Court understands the brokerage agreement, as alleged by SZN in the Amended

17

Counterclaim, as a contract to do exactly what GlobalGeeks admits SZN did: connect buyer and seller. In their supporting briefs, both GlobalGeeks and SZN analogize the current dispute to a landscaping contract where contracting parties have outsourced certain landscaping work:  SZN argues that the situation is similar to when Party A hires Party B to trim her grass but Party B outsources the labor to Party C and at the end of the day, the grass gets trimmed; GlobalGeeks argues that a better analogy would be if Party A contracted with Party B for delivery of mulch, Party B outsources delivery of the mulch to Party C, and Party C takes back its mulch after dumping half of it on Party A's lawn. [Docket No. 67, at 11-12; Docket No. 68, at 2.] The Court rejects the parties' invitation to literally and figuratively get lost in the weeds of GlobalGeeks's failure to perform argument. SZN has adequately alleged that it brokered a deal for which it received no payment. What, if any, damages SZN is entitled to, including whether it is entitled to its full 37.5 percent commission for what GlobalGeeks has coined a "failed deal," is an issue for another day.

Third, GlobalGeeks relies on the statute of frauds defense, arguing that although the purchase order memorializes the basic terms of its order, identifying both GlobalGeeks and SZN, the number of masks comprising Shipment 3, and the price, it does not include any details of SZN's commission. [Docket No. 60-1, at 11 ("SZN is seeking to recover from GlobalGeeks its previously undisclosed commission that is not reflected anywhere in the purchase order for goods that USAG retrieved shortly after delivery.").] SZN cites *Graziano v. Grant*, in which the

Superior Court of New Jersey, Appellate Division explained that when "there has been performance by one party and to do otherwise would work an inequity on the party who has performed," application of the statute of frauds is prohibited. 326 N.J. Super. 328, 341, 741 A.2d 156, 163 (App. Div. 1999) (citations omitted). As previously discussed, SZN has adequately alleged that it upheld its end of the bargain as the broker of the deal by finding GlobalGeeks a seller/supplier for Shipment 3, a service that SZN also alleges to have already provided for GlobalGeeks for both Shipment 1 and Shipment 2. GlobalGeeks also accepted delivery of the first 476,000 masks in Shipment 3, which SZN specifically alleges was to gain leverage and obtain a refund for nonconforming Shipment 2.

The Court also notes that "the statute of frauds is not meant 'to arm contracting parties with a sword they may use to escape bargains they rue.'" *Power Restoration Int'l, Inc. v. Pepsico, Inc.*, Civ. No. 12-1922, 2013 WL 5636618, at *5 (E.D. Pa. Oct. 11, 2013) (quoting *Flight Sys., Inc. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 128 (3d Cir. 1997)). In *Power Restoration*, the court rejected a statute of frauds defense on a motion to dismiss because "the plaintiffs may still be able to find a way to produce evidence to satisfy the statute." Indeed, this is also the case in the present controversy, and the Court is in the very early stages of untangling the complex web of transactions that occurred between the different parties and shipments of KN95 masks involved. The Third Circuit has also explained in analyzing a like provision of the UCC that "[i]n a commercial transaction involving the sale of goods, where the parties' performance demonstrates agreement, we look past disputes over contract

19

formation and move directly to ascertain its terms." *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 445 (3d Cir. 2003). The Court is satisfied that SZN has alleged sufficient facts that it performed under the brokerage agreement with GlobalGeeks regarding Shipment 3 to survive a motion to dismiss on its breach of contract claim.

With respect to the implied covenant of good faith and fair dealing (Count IV of SZN's Amended Counterclaim), the Court finds that SZN had met its burden and has plead that GlobalGeeks acted in bad faith by not performing its obligations under the contracting with SZN. The motion to dismiss Count I and Count IV of SZN's Amended Counterclaim is denied.

### 2.   Fraud (Count III)

GlobalGeeks asserts that SZN's "most particularized allegation" regarding its fraud claim is that "[o]n May 4-5, 2020, when Global[Geeks] took possession of the first 476,000 masks at its warehouse in Moorestown, New Jersey, it intentionally misrepresented an intention to perform under Purchaser Order No. 3." [Docket No. 60-1, at 15 (citations omitted).] GlobalGeeks goes on to suggest that SZN has not met the heightened pleading standard required under Fed. R. Civ. P. 9(b) for fraud, which requires a party to plead "with "particularity the circumstances constituting fraud or mistake" because SZN has not pled the "who, what, when, where, and how" of its fraud claim. [*Id.* at 14 (quoting *Pain & Surgery Ambulatory Surgical Ctr. v. Liberty Mut. Ins. Co.*, Civ. No. 06-1501 (WJM), 2007 WL 1814083, at *4 (D.N.J. June 19, 2007)).]

The Third Circuit has acknowledged that there is no precise formula that will establish a fraud claim has been pled with particularity as required by Rule 9(b). *Cal. Pub. Employees' Ret. Sys. V. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) (explaining that "[a]lthough Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud") (citations omitted)). Here, the Court agrees that SZN has met its pleading burden to "set forth a colorable claim of fraud and afford the defendant notice as to which of its actions or communications form the basis for it." *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 975 F. Supp. 584, 596 (D.N.J. 1996). Indeed, SZN has laid out a detailed timeline of events in the Amended Counterclaim regarding GlobalGeeks's objection to nonconforming Shipment 2 "on or about May 1, 2020," and acceptance of 476,000 masks in Shipment 3 a few days later "on May 4-5, 2020. . . solely to leverage its claims relating to Shipment [2]." [Docket No. 28 ¶ ¶ 171, 183, 186.]

The Court understands the alleged fraud to be the acceptance of Shipment 3 for the sole purpose of gaining leverage over SZN in a different dispute involving Shipment 2, which the Court also construes as separate from a contractual claim for mere nonpayment of Shipment 3. The Court need not get bogged down with GlobalGeeks's contention that the fraud claim should be dismissed because SZN did not identify an individual employee of GlobalGeeks and the precise statement he or she made when accepting delivery of Shipment 3. SZN has adequately alleged that

GlobalGeeks induced delivery of Shipment 3 for an improper purpose, so Count III of the Amended Counterclaim survives.

> ### 3.      Tortious Interference with Prospective Economic Advantage (Count II); Equitable Estoppel/Detrimental Reliance (Count V); Punitive Damages (Count IV and V)

SZN has not responded to any of GlobalGeeks's arguments that the Court should dismiss SZN's claims of tortious interference with prospective economic advantage (Count II), equitable estoppel/detrimental reliance (Count V), or punitive damages (under Count IV and Count V). Thus, the Court assumes that such claims have been abandoned and grants GlobalGeeks's Motion to Dismiss with respect to such claims. With respect to Count II, the Court also does not find that a claim for tortious interference with prospective economic advantage was proper in the first instance and agrees with GlobalGeeks that "[t]here are no allegations in the Amended Counterclaim that GlobalGeeks had any knowledge whatsoever of a contractual relationship between USAG and SZN and that GlobalGeeks intended to interfere with that contract." [Docket 60-1, at 13-14.] In addition, based on the Court's reading of the Amended Counterclaim, SZN's claims of equitable estoppel/detrimental reliance and for punitive damages appear to be specious. In any event, the Court will only reconsider any of SZN's abandoned claims if SZN provides a legally sufficient basis as to why such claims should not be precluded as the litigation proceeds.

## VI.   CONCLUSION

For the foregoing reasons, GlobalGeeks's Motion to Dismiss the Amended Counterclaim [Docket No. 60] is GRANTED, with respect to Count II, Count V, and SZN's request for punitive damages in Count IV, and DENIED, with respect to Count I, Count III, and the remainder of Count IV. Bargain's Motion to Dismiss the Third-Party Complaint [Docket No. 61] is DENIED. An accompanying Order shall issue.


<u>November 23, 2021</u>                          <u>s/Renée Marie Bumb</u>
Date                                        Renée Marie Bumb
                                            U.S. District Judge